842 So.2d 465 (2003)
Ronald HILTS
v.
WAL-MART STORES, INC.
No. 02-1440.
Court of Appeal of Louisiana, Third Circuit.
April 2, 2003.
*467 Frank A. Flynn, Allen, Gooch, et al, Lafayette, LA, for Defendant/Appellant, Wal-Mart Stores, Inc.
Chuck David Granger, Morrow, Morrow, Ryan & Bassett, Opelousas, LA, for Plaintiff/Appellee, Ronald Hilts.
Court composed of OSWALD A. DECUIR, MICHAEL G. SULLIVAN, and BILLY HOWARD EZELL, Judges.
EZELL, Judge.
Wal-Mart Stores, Inc. appeals a workers' compensation judgment which held that Ronald Hilts, Jr., suffered an accident in the course and scope of his employment which caused injuries to his back, thereby entitling him to benefits. Wal-Mart asserts as error the workers' compensation judge's (WCJ) award of disability benefits, claiming it made a job offer to Hilts within his work restrictions on November 22, 2000. Hilts answered the appeal, contesting the WCJ's determination of benefits and seeking penalties and attorney's fees.

FACTS
During his senior year in high school, Hilts got a job working at Wal-Mart in Eunice. He worked from 4:00 in the afternoon until 10:00 p.m. Hilts worked in receiving, and his duties included unloading the merchandise from the trucks and transporting the freight to the floor. Hilts would also help customers when needed.
Hilts testified that on August 29, 2000, he was taking freight to the floor when a customer asked for help with an air conditioner. He took the customer to the seasonals section where he removed an 18,000 BTU air conditioner. The box was busted, so he removed another air conditioner and put that one back on the shelf. It was when Hilts picked up the second air conditioner that he felt something pop in his back. He testified that he did not feel pain at the time.
When Hilts awoke the next morning to get ready for school, he could not move. Hilts went to work that day and reported the accident to his supervisor, Troy Folse. Folse assigned him light-duty work that day. Hilts reported the accident to Dwayne Menard on September 4 and filled out an accident report at that time.
A hearing was held on July 26, 2002. The WCJ determined that Hilts did suffer an accident in the course and scope of his employment. Supplemental earnings benefits were awarded from August 29, 2000 to October 24, 2000. Temporary total benefits were awarded from October 24, *468 2000 to the date of trial. The judgment also provided that Wal-Mart was entitled to a credit for any indemnity benefits and actual wages paid, and that medical benefits were owed. Penalties and attorney's fees were denied.

ACCIDENT
In order to establish a claim for workers' compensation benefits, a claimant must establish by a preponderance of the evidence that an accident occurred during the course and scope of his employment, the accident caused his injuries, and the injury caused his disability. Dore v. Sydran Food Servs. II, L.P., 01-728 (La.App. 3 Cir. 10/31/01), 799 So.2d 825. "[A] worker may meet this burden by his testimony alone if no other evidence discredits or casts serious doubt upon the claimant's story and the testimony is corroborated by the circumstances following the accident." Riley v. Int'l Maintenance Corp., 01-481, p. 2 (La.App. 3 Cir. 10/3/01), 796 So.2d 874, 875-76, writ denied, 01-2890 (La.1/25/02), 807 So.2d 837. The manifest error-clearly wrong standard governs an appellate court's review of a WCJ's determination that there was a work-related accident. Id.
Wal-Mart argues that the WCJ erred in finding that an accident occurred, claiming that Hilts injured his back while working at McDonald's in 1999 and in a fight at the family-run barbeque restaurant, Jazzco, in October 2000. We find that the evidence in the record clearly establishes just the contrary.
Hilts was injured while working at McDonald's in January 1999. The evidence establishes that he fell, causing his right hand and wrist to slam against the freezer. This caused swelling and pain in his right hand. Hilts was diagnosed with a severe sprain of the right hand and carpal tunnel syndrome. There is no evidence that he suffered with any back problems as a result of the McDonald's accident.
The Jazzco incident is initially confusing considering the fact that Hilts is named after his father Ronald Hilts, Sr. However, the evidence in the record establishes that it was Senior that was involved in an altercation at Jazzco and that Junior was not even at the restaurant until the incident was over.
The evidence clearly establishes that Hilts injured his back when lifting an air conditioner while working at Wal-Mart. He reported the incident to his immediate supervisor, Folse, who verified Hilts' testimony. Folse also testified that Hilts did not complain about back pain before this incident. The WCJ was correct in finding that Hilts suffered a work-related accident.

SUPPLEMENTAL EARNINGS BENEFITS
Hilts contends that the trial court erred in awarding supplemental earnings benefits (SEB) from the date of the accident until October 24, 2000. Hilts claims that he is entitled to temporary total disability benefits (TTD) from the date of the accident, given that his medical condition was evident from when he was injured that date forward.
Louisiana Revised Statute 23:1221(1)(a) provides that an employee is entitled to TTD when an injury disables an employee from engaging in any self-employment or occupation for wages "whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience...." "An employee is not entitled to collect either temporary total disability or permanent total disability when *469 he is physically able to engage in any employment." Spencer v. Gaylord Container Corp., 96-1230, p. 5 (La.App. 1 Cir. 3/27/97), 693 So.2d 818, 822.
At Wal-Mart's request, Hilts initially saw Dr. Brian Heinen when he reported his injury. Dr. Heinen first examined Hilts on September 5, 2000. At that time Dr. Heinen returned Hilts to light-duty work with no lifting. On September 13, 2000, Dr. Heinen excused Hilts from work for one week.
Hilts also saw Dr. Elemer Raffai, who had previously treated Hilts when he was injured at McDonald's. As of September 7, 2000, Dr. Raffai recommended light-duty work with minimal lifting. At the October 10, 2000 office visit with Dr. Raffai, an MRI indicated a disc protrusion to the right paracental L5-S1 which Dr. Raffai noted corresponded to the clinical findings. However, it was not until October 24, 2000, that Dr. Raffai decided that Hilts should not work because Hilts indicated the pain was so severe that he could not tolerate light duty.
Hilts' employment records indicate that he worked intermittently, although not for long periods, during this time period, with his last day on October 17, 2000. Based on the above evidence, we cannot say that the WCJ was manifestly erroneous in finding that Hilts was entitled to SEB from the date of the accident until October 24, 2000.

EMPLOYMENT OFFER
Wal-Mart claims the WCJ erred when it awarded disability benefits following its November 22, 2000 offer of modified work duties within Dr. Raffai's work restrictions. Hilts admits that Dr. Raffai released him to return to strict sedentary work but only after repeated tries by Wal-Mart to secure the release.
[T]he issue of disability presents a legal, not purely a medical, question which must be determined after considering all of the medical and lay testimony in the record. In other words, the [WCJ] determines whether a claimant has met his burden of proving disability only after weighing all the medical and lay testimony. Thus, the issue of disability is a factual determination. Factual findings of a[WCJ] may not be disturbed by an appellate court unless the factual findings are manifestly erroneous or clearly wrong. In order for an appellate court to set aside a [WCJ's] factual finding, the appellate court must conclude from the record, viewed in its entirety, that a reasonable factual basis did not exist for the [WCJ's] finding and that this finding is clearly wrong.
Fritz v. Home Furniture-Lafayette, 95-1705, pp. 3-4 (La.App. 3 Cir. 7/24/96), 677 So.2d 1132, 1134 (citations omitted).
A claimant may prove an inability to engage in gainful employment due to substantial pain. The presence of pain without proof that this pain is substantial enough to make the pursuit of gainful employment an impossibility is inadequate under La.R.S. 23:1221(1). Whether the claimant's pain is substantial enough is a question of fact to be determined by the totality of circumstances. Furthermore, the factual conclusions of the trial court are entitled to great weight and will not be reversed absent manifest error. To meet his burden of proving entitlement to TTD benefits by clear and convincing evidence, a claimant must provide objective medical evidence of the disabling injury.
Aymond v. R.J. Jones & Sons, 96-443, pp. 7-8 (La.App. 3 Cir. 11/20/96), 690 So.2d 769, 774 (citations omitted).
Wal-Mart's accident file contains a notice from Dr. Raffai that, as of his examination *470 of Hilts on November 14, 2000, he did not want Hilts working for a period of two weeks. However, two days later, on November 16, 2000, there is a Wal-Mart form that indicated Dr. Raffai released Hilts to strict sedentary work with no lifting, bending, or stooping.
On November 22, 2000, based on Dr. Raffai's release, Wal-Mart offered Hilts the position of greeter to work six hours a day, five days a week, with a stool. Wal-Mart called Hilts directly to come to the office; Hilts came accompanied by his father and attorney. At his attorney's advice, Hilts did not sign anything and left. A letter offering the same employment was also sent to Hilts, but he never responded.
Hilts testified that the injury got worse over the next several months after the accident. He stated that the position that Wal-Mart had offered him was the work he had been performing since the accident for the few hours he worked and that it was hard for him to work even those few hours at this position.
In January 2001, Hilts began seeing Dr. Morgan Lorio. Dr. Lorio's notes from the March 21, 2001 visit indicated that Hilts was not any better, but he opined that it would be reasonable to try and return Hilts to some form of employment. It was not until August 28, 2001, when Hilts saw Dr. Louis Blanda, that a doctor once again found that Hilts was not capable of working. Dr. Blanda then scheduled Hilts for further studies. A myelogram and CT scan were positive at L5-S1 to the right for a focal disk herniation with S1 nerve root displacement. The EMGs were positive for L5-S1 radiculitis, confirming the studies ordered by Dr. Raffai in 2000 before Dr. Raffai released Hilts to return to work. Dr. Blanda advised that Hilts required a L5-S1 diskectomy with pedicle screw fusion. He continued to recommend that Hilts not work.
In Dr. Blanda's January 24, 2002 notes, he observed that Dr. Gregory Gidman recommended surgery if the studies were positive. Dr. Blanda noted that Hilts' studies were positive. Dr. Gidman saw Hilts one time on August 7, 2001, for a second medical opinion. Dr. Gidman recommended studies at that time and reported that "[i]f the myelogram, CT scan and electrical studies demonstrate nerve root compression, then surgical decompression should be considered." Dr. Blanda did not see Hilts again until July 18, 2002, because his appointment was "canceled per workers' comp." He still opined that surgery was necessary.
After a review of the medical evidence and Hilts' testimony, we find that the WCJ was not clearly wrong in finding that Hilts was unable to engage in any gainful employment from November 22, 2000 to August 28, 2001. It is true that Dr. Raffai released Hilts to return to work, but it was only two days earlier when Dr. Raffai had restricted Hilts from working. When Dr. Blanda finally saw Hilts, he restricted Hilts from working. Hilts' condition at that time was the same as it was when Wal-Mart offered him the job. Based on all the medical evidence and Hilts' own testimony that he could not perform this particular job, we find it reasonable for the WCJ to conclude that Hilts was not able to engage in any employment.

PENALTIES AND ATTORNEY'S FEES
Hilts claims that Wal-Mart was arbitrary and capricious in handling numerous aspects of this case and that he is entitled to penalties and attorney's fees.
Awards of penalties and attorney's fees in workers' compensation are essentially penal in nature, being imposed to *471 discourage indifference and undesirable conduct by employers and insurers. Although the Workers' Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed.
The fact that an employer is subjectively motivated to avoid paying compensation is not determinative. Neither is the fact that an employer loses a disputed claim. (penalties and fees are never assessed automatically against the losing party) On the other hand, the fact that no witnesses saw the alleged accident or that there was no immediate report of an accident by the plaintiff does not necessarily justify the denial of benefits. The employer must adequately investigate the claim, and the crucial inquiry is whether the employer had an articulable and objective reason for denying or discontinuing benefits at the time it took that action.
Williams v. Rush Masonry, Inc., 98-2271, pp. 8-9 (La.6/29/99), 737 So.2d 41, 46 (citations omitted).
Louisiana Revised Statute 23:1201(F) provides for the payment of penalties and attorney's fees if the employer or insurer fails to commence payment of benefits timely or to pay continued installments timely, or to pay medical benefits timely unless the claim is reasonably controverted. Furthermore, La.R.S. 23:1202.2 provides for attorney's fees when the employer or insurer arbitrarily discontinues payment of benefits due.
Hilts has not complained about any problem regarding the payment of any compensation or medical benefits. He argues that he is entitled to penalties and attorney's fees for the way Wal-Mart "handled" this claim. However, the Workers' Compensation Act does not provide penalties and attorney's fees for arbitrary and capricious "handling" of a claim. Therefore, we find that the WCJ did not err in refusing to award penalties and attorney's fees.
For these reasons the judgment of the Office of Workers' Compensation is affirmed. Costs of this appeal are assessed to Wal-Mart.
AFFIRMED.